

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00838-CV

**IN THE INTEREST OF P.H.S.** and E.K.S., Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01847
Honorable Raul Perales, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Irene Rios, Justice
Lori Massey Brissette, Justice
Velia J. Meza, Justice

Delivered and Filed: June 24, 2026

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

Appellants Mother and Father appeal the trial court's order terminating their parental rights to their children.[1]  Mother challenges the sufficiency of the evidence supporting the trial court's findings under statutory grounds (D) and (E), and challenges the sufficiency of the evidence supporting the trial court's findings that termination of her parental rights is in the children's best interests.  Father challenges the sufficiency of the evidence supporting the trial court's findings under statutory grounds (D), (E), and (N), and challenges the sufficiency of the evidence

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and we refer to the children using their initials or as "the children."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

supporting the trial court's findings that termination of his parental rights is in the children's best interests.

We hold there is legally insufficient evidence supporting the trial court's findings that: (1) Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to subsection 161.001(b)(1)(D) of the Texas Family Code; and (2) Father engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to subsection 161.001(b)(1)(E) of the Texas Family Code. Therefore, we reverse those findings. In all other respects, we affirm the trial court's termination order.

## BACKGROUND

The children lived with Mother when the Department first got involved in the underlying case. The Department received allegations that the children were being neglected, the conditions of the home were unsanitary and unfit for the children, and there was domestic violence in the home. To avoid removal, Mother agreed to engage in Family Based Safety Services ("FBSS") with the Department in August 2024. Although the family received FBSS for several months, Mother failed to address the unsanitary conditions of the home and Mother failed to recognize how dangerous the home's condition was to the children. The safety plan stated Mother's paramour was not allowed to reside with the children. Initially, Mother sent the children to live with a friend while she continued to reside with her paramour. Mother subsequently retrieved the children to live with her and her paramour in violation of the safety plan. Thereafter, one of the children suffered bruising along one side of his face. After the injury, Mother was unable to provide the

Department with someone who could supervise Mother and the children while they were in FBSS, so the Department sought removal.

On November 22, 2024, the Department filed a petition seeking termination of Father's and Mother's parental rights to the children. The trial court held a bench trial on November 10, 2025. The trial court heard testimony from Father, Mother, Amber Sixtos, the Department's FBSS caseworker; Walden Wong, the Department's caseworker after removal; and the children's foster mother.[2]

On December 17, 2025, the trial court signed an order terminating Mother's and Father's parental rights to the children. The trial court terminated Mother's parental rights based on statutory grounds (D) and (E) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E). The trial court terminated Father's parental rights based on statutory grounds (D), (E), (N), and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (P). The trial court also found it was in the children's best interests to terminate Mother's and Father's parental rights. *See id.* § 161.001(b)(2). Mother and Father appeal.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

---

[2] We refer to the children's foster mother as "Foster Mother."

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.— Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### STATUTORY GROUNDS FOR TERMINATION

Mother and Father both argue the evidence is insufficient to support the trial court's findings under statutory grounds (D) and (E).

Only one predicate ground finding under subsection 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under subsections 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for the parents. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Here, due process requires us to review the trial court's findings under subsections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See In re C.W.*, 586

S.W.3d 405, 407 (Tex. 2019) ("[W]hen a trial court makes a finding to terminate parental rights under section 161.001(b)(1)(D) or (E) and the parent challenges that finding on appeal, due process requires the appellate court to review that finding and detail its analysis."); *see also R.R.A.*, 687 S.W.3d at 279 ("Although termination under (P) is sufficient to reverse the judgment of the court of appeals, we must also review termination under subsections (D) and (E) because a finding of termination under those grounds may justify termination of parental rights to other children in subsection (M)."); *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass Father's evidentiary challenges to [s]ubsections (D) and (E) . . . because termination of a parent's rights under either can serve as a ground for termination of his rights to *another* child.").

Here, the trial court determined from the evidence that Mother and Father "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren] . . . [and] engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren] . . . ." *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E). To endanger a child under subsections (D) and (E) means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *See J.W.*, 645 S.W.3d at 748; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it does not require that there be conduct directed at the child or that the child actually suffer injury." *J.W.*, 645 S.W.3d at 748 (internal quotation marks and alterations omitted).

Though both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *2

(Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.). Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

*Statutory Ground (D)*

Subsection (D) allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The child's "environment" encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. *S.R.*, 452 S.W.3d at 360. "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re A.L.S.*, 660 S.W.3d 257, 271 (Tex. App.—San Antonio 2022, pet. denied) (alteration omitted). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.). Subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

Under Subsection (D), the trial court examines "evidence related to the environment of the child[] to determine if the environment was the source of endangerment to the [child's] physical or emotional well-being." *J.T.G.*, 121 S.W.3d at 125. Parental conduct, however, is a factor that contributes to the child's environment. *Id.* The time period relevant to a review of conduct and

environment under statutory ground (D) is prior to the child's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Statutory Ground (E)*

Subsection (E) permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."   TEX. FAM. CODE ANN. § 161.001(b)(1)(E).   The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).

"It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when . . . the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.); *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct is not limited to actions directed towards the child.").  "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.).  "Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.F.S.*, No. 04-20-00441-CV, 2021 WL 603364, at *4 (Tex. App.—San Antonio Feb. 17, 2021, pet denied) (mem. op.).

"Domestic violence, want of self-control and propensity for violence may be considered as evidence of endangerment." *See R.S.-T.*, 522 S.W.3d at 110.  "Texas courts routinely consider

evidence of parent-on-parent physical abuse in termination cases without specifically requiring evidence that the conduct resulted in a criminal conviction."  Id.

*(A)  Mother's Challenge to the Statutory Grounds*

In her first two issues, Mother contends the evidence is legally and factually insufficient to support the trial court's statutory ground (D) and (E) findings.

Here, the trial court heard testimony that the family engaged in FBSS because the Department was concerned with allegations of domestic violence between Mother and her former paramour in the presence of the children and the home conditions were unsanitary.  Regarding the domestic violence, Amber Sixtos, the Department's FBSS caseworker, testified there was an incident in the home where Mother and her paramour got into a verbal altercation that escalated to the point that a friend tased the paramour to subdue him.  *See In re A.L.*, No. 04-14-00365-CV, 2014 WL 5197774, at *4 (Tex. App.—San Antonio Oct. 15, 2014, no pet.) (holding "[a]busive or violent conduct by a parent or other resident of a child's home can constitute a condition that endangers the child's physical or emotional well-being within the meaning of [subsection 161.001(b)(1)(D),]" and "[v]iolent conduct directed at the other parent is evidence of endangerment under [subsection 161.001(b)(1)(E), even if not committed in the child's presence"). To address the domestic violence, Mother's safety plan stated the children were not allowed to reside in the same home as the paramour.  Therefore, Mother placed her children with a friend and continued to reside with her paramour.  However, Mother later retrieved the children to reside in her home while her paramour was still living with her, in violation of the safety plan.

Thereafter, Sixtos performed a home visit to check in with the family.  Sixtos testified the lights in the house were off when Sixtos came to visit.  When Sixtos looked at the children, she noticed E.K.S., who was approximately one and a half years old, had bruising "on one entire side

of his face." Sixtos asked Mother how E.K.S. received the bruising. Mother told Sixtos that the children were taking a shower together when Mother stepped away for a moment and, when she returned, P.H.S., who was three years old at the time, was slamming E.K.S.'s face into the side of the bathtub. Sixtos asked if Mother had taken E.K.S. to be examined by a health professional. Mother told Sixtos she called the hospital and was told to observe E.K.S. for one hour and, if the child did not get worse, then no further action would be necessary. Mother did not take the child to the hospital. Sixtos, however, believed the injury to be severe enough to merit examination by a doctor. Sixtos took the child to the doctor, consulted health professionals, and investigated the injury. The children were removed from the home immediately after Sixtos's investigation.

The trial court could have inferred that Mother refused to turn the lights on when Sixtos visited the family because Mother was trying to hide evidence of physical abuse from Sixtos. Thus, the trial court could have reasonably rejected Mother's version of events and instead found the injury was more consistent with physical abuse. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony, and we defer to the factfinder on witness credibility issues).

"Evidence of domestic violence may be considered as evidence of endangerment under subsection (E)." *In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (internal quotation marks, alterations, and footnotes omitted) ("Endangering conduct under subsection (E) need not be directed at the child[,] [n]or must the child suffer actual injury.") And, "[i]t is axiomatic that a child's exposure to domestic violence can produce a home environment that endangers a child's well-being." *In re E.J.C.T.*, No. 04-024-00663-CV, 2025 WL 871627, at *3 (Tex. App.—San

Antonio Mar. 19, 2025, no pet.). Based on the testimony described above, the trial court could have reasonably concluded the children were exposed to repeated episodes of domestic violence that ultimately resulted in injury to E.K.S. Thus, there was sufficient evidence for the trial court to form a firm belief or conviction that Mother engaged in a course of conduct, i.e. the multiple incidents of domestic violence, and exposed the children to an endangering environment that ultimately led to E.K.S.'s injury.

In addition, Sixtos testified the living conditions in the home were dangerous to the children. "Unsanitary conditions can qualify as surroundings that endanger a child." *In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. 2003, no pet.). According to Sixtos, there were dog feces and urine, trash, dirty dishes, clothing, and other random items throughout the home. Sixtos testified the home was "unwalkable" and she had to "walk on stuff" to get through the house. Sixtos testified the conditions of the home were unsafe for a one-year-old and a three-year-old. She was concerned the children may eat dog feces on the floor or old, left-over food that was throughout the house. She was also concerned the children may get into the dog urine that was on the floor. Sixtos further testified there were items on the floor that the children could choke on. According to Sixtos, the home was in such a state that it was not safe for the children to navigate over the items that were scattered on the floor throughout the home. *See In re D.M.*, 452 S.W.3d 462, 469–70 (Tex. App.— San Antonio 2014, no pet.) (holding unsanitary living conditions that pose a danger to the children constitute acts or omissions supporting subsection (D) and (E) findings).

Sixtos explained the living conditions were dangerous for the children; however, Mother did not seem to understand the dangers. Mother told Sixtos that the home was a mess because "she was in the middle of a deep cleaning." But Sixtos opined the condition of the home was not

the result of someone deep cleaning the home. Again, the trial court could have rejected Mother's excuse and instead believed Sixtos. *See E.A.M.V.*, 2019 WL 1923214, at \*4.

While the family was in FBSS, Mother took no action to address the unsanitary conditions of the home. Despite the warnings from Sixtos that the conditions of the home posed a danger to the children, Sixtos stated the home got worse and more trash piled up at every visit Sixtos made to the home.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that Mother knowingly allowed the children to remain in an environment and engaged in a course of conduct that endangered their physical or emotional well-being. TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E); *see also H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's subsection (D) and (E) findings as to Mother.

Accordingly, Mother's first and second issues are overruled.

*(B) Father's Challenge to the Statutory Grounds*

In his first two issues, Father contends the evidence is legally and factually insufficient to support the trial court's statutory ground (D) and (E) findings. The evidence linking Father to a course of endangering conduct or his contribution to an endangering environment is lacking.

The trial court heard testimony that Father had served a little over two years of a fifteen-year sentence for convictions of possession of drugs with the intent to deliver and felon in possession of a firearm. Although we may consider "the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists[,]" "mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the

emotional or physical well-being of a child." *In re N.L.S.*, 715 S.W.3d 760, 765 (Tex. 2025). Here, there was no testimony that Father engaged in an endangering course of conduct. There was no evidence about the circumstances of the criminal conduct, how it might be considered endangering conduct, or that Father engaged in a *course* of endangering conduct. The trial court also heard testimony that about ten years prior to trial, Father served time for robbery, but there was no evidence about the circumstances of that conviction either or how long Father was incarcerated for that conviction. There was also no evidence that Father had any knowledge of the children's circumstances while in Mother's custody.

The Department did not expound on the nature of Father's crimes or establish that Father's criminal conduct established a pattern of escalating repeated convictions. To put it plainly, the Department wholly failed to meet its burden to connect the circumstances around Father's incarceration to a course of conduct that endangered the children. Thus, the evidence is legally insufficient to terminate Father's parental rights under subsection (E).

Likewise, the Department did not provide any evidence that would support a finding that Father knowingly placed the children in an endangering environment. "Subsection (D) is not a basis for terminating parental rights if the parent was unaware of the endangering environment." *In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.). As mentioned above, the Department wholly failed to provide evidence that Father knew of the children's dangerous circumstances while in Mother's care. The Department further failed to establish a causal link between the circumstances surrounding Father's incarceration to the endangering environment the children were subjected to while they were in Mother's care. Thus, the evidence is legally insufficient to terminate Father's parental rights under subsection (D).

Accordingly, we sustain Father's first and second issues.

In his third issue, Father contends the evidence is legally and factually insufficient to support a finding that he constructively abandoned the children under statutory ground (N). However, Father fails to challenge the trial court's finding under statutory ground (P). "To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order." *In re I.E.P.*, No. 04-24-00255-CV, 2024 WL 3802517, at *2 (Tex. App.—San Antonio Aug. 14, 2024, no pet.). "When an appellant does not challenge all the grounds that may support an order of termination, we typically do not address the sufficiency of the evidence of any of the predicate grounds for termination." *Id.* (citing *A.V.*, 113 S.W.3d at 361–62). "Instead we must accept the validity of the unchallenged ground[] and affirm the termination order." *I.E.P.*, 2024 WL 3802517, at *2 (citing *A.V.*, 113 S.W.3d at 361–62).

Because Father does not challenge the trial court's finding under statutory ground (P), we must accept the validity of that unchallenged ground and affirm the termination on statutory ground (P). *See I.E.P.*, 2024 WL 3802517, at *2 (citing *A.V.*, 113 S.W.3d at 361–62). Therefore, we need not address Father's issue challenging statutory ground (N).[3] *See A.V.*, 113 S.W.3d at 361–62.

Accordingly, Father's third issue is overruled.

## BEST INTEREST

In Mother's third issue and Father's fourth issue, Mother and Father each argue the evidence is legally and factually insufficient to support a finding that termination of their parental rights is in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In*

---

[3] Unlike statutory grounds (D) and (E), statutory ground (N) does not implicate due process concerns for future children that require us to review it if we can affirm on another ground.

*re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest.  TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4] *See id.* § 263.307(b).  We also consider the *Holley* factors.[5]  *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."  *Id.*  In analyzing these factors, we must focus on the best interest of the child, not the

---

[4] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*A. Mother*

To avoid removing the children, the Department developed a family plan while the family was receiving FBSS. The family plan required Mother to engage in parenting classes, domestic violence classes, drug tests, and anger management. However, Mother engaged only in the parenting classes.

To address the concerns at the time of removal, the Department created another service plan for Mother. Mother admitted the Department worked with her to create the service plan and that the service plan was narrowly tailored to address the concerns that led to removal. Mother also acknowledged that she reviewed the service plan and that the service plan was made an order of the court. Under her service plan, Mother was required to participate in and successfully complete a parenting course, domestic violence program, take a psychological assessment and follow all recommendations, take a drug assessment and follow all recommendations, pass random drug tests, and obtain and maintain stable housing and employment.

Mother conceded she only completed the domestic violence classes, psychological evaluation and drug assessment. "A [factfinder] may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [s]he does not have the ability to motivate [herself] to seek out available resources needed now or in the future." *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Mother's failure to complete services are relevant to Mother's parental abilities, the programs available to assist Mother, and Mother's acts or omissions that indicate the parent-child relationship is improper and weigh in favor of a finding that the children's best interests are served by termination of Mother's parental rights. *See Holley*, 544 S.W.2d at 371–72.

Mother's psychological evaluation recommended she engage in individual counseling. Although Mother testified she was engaged in individual counseling, Wong, the Department's caseworker, clarified Mother was unsuccessfully discharged from individual counseling with her first counselor and only reengaged with a new counselor just before she was arrested and incarcerated. Mother's failure to meaningfully engage in counseling until the very end of the case supports a finding that Mother is unable to provide the children with a safe environment. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (providing, in a best-interest determination, the trial court considers the parent's willingness and ability to "seek out, accept, and complete counseling services" when determining whether the parent is willing and able to provide the children with a safe environment).

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *A.L.S.*, 660 S.W.3d at 264. "Criminal conduct, prior convictions, and incarceration affect[] a parent's life and [her] ability to parent, thereby subjecting [her] child[ren] to potential emotional and physical danger." *In re J.J.O.*,

No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.). Mother was previously convicted of assault in 2022 and is currently incarcerated on two charges of theft and one charge of engaging in organized crime. The trial court heard testimony that law enforcement found nineteen bags of marijuana and stolen credit cards in Mother's home when she was arrested.

The trial court could have found the testimony that Mother was in possession of large quantities of marijuana especially concerning because Mother's service plan indicated that she has a history of illegal drug use. *A.A.M.*, 464 S.W.3d at 426 ("Drug use and the imprisonments relating to it harm the physical and emotional well-being of a child."); TEX. FAM. CODE ANN. § 263.307(b)(8) (stating a parent's history of substance abuse is a factor considered by the trial court in determining whether the parent can provide the children with a safe environment).

In addition, Mother's service plan required her to submit to random drug testing. Wong testified Mother complied with only eight out of twenty-four referrals to drug test. Mother's service plan informed Mother that failure to submit to a drug test would result in the test being considered positive for drugs. Although Mother denied using drugs during the case, the trial court could have disbelieved Mother and instead relied on the evidence that Mother refused to take sixteen out of twenty-four drug tests. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."); *In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places [the parent's] children in emotional and

physical danger"). Further, Wong testified that two of Mother's hair follicle tests taken in January 2025 and May 2025 were concerning.

"Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, [the parent's] parental abilities, the stability of [the parent's] home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.); s*ee also In re J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, pet. denied) (mem. op.) (alterations omitted) ("Continued illegal drug use by the parent is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child.").

Mother's drug-related illicit activity, her failure to submit to drug testing and concerning drug tests during the pendency of the case weigh in favor of termination because those actions pose emotional and physical danger to the children now and in the future, and support a conclusion that Mother is unable to provide the children with a safe environment or provide for the children's emotional and physical needs now and in the future. *A.N.*, 2020 WL 354773, at *3; *J.J.O.*, 2018 WL 5621881, at *2; TEX. FAM. CODE ANN. § 263.307(b)(8).

Although the Department could have done a better job eliciting testimony surrounding Mother's incarceration and drug issues, the record contains sufficient evidence for the trial court to conclude that Mother continued to engage in illegal drug use and drug-related illicit activity, the latter of which the trial court could have reasonably inferred resulted in her incarceration.[6] *See In*

---

[6] The trial court heard testimony that Mother was being held in the Bexar County jail for two theft charges and a charge for engaging in organized crime. The trial court also heard evidence there were "[nineteen] bags of marijuana and credit cards" found in Mother's home when she was arrested. The trial court could have reasonably inferred the charges were related to this contraband.

*re R.M.H.*, No. 04-23-00765-CV, 2023 WL 8103188, at *4 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.) (stating incarceration standing alone will not support termination but incarceration is nevertheless "an appropriate factor for a trial court to consider in evaluating a child's best interest").

Mother also acknowledged the children could not live with her if they were reunited because she is currently incarcerated and she is unable to care for or provide for her children. *See In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op.) (considering a parent's recent arrest as evidence the parent is unable to provide for the child's emotional and physical needs because it indicates instability, including the lack of a stable home). She identified her sister and a friend as potential placements for the children until she is released from her incarceration. However, Wong testified Mother's sister had insufficient space in her home for the children, and Mother's friend resided with a paramour who had a criminal history.

The evidence supporting the trial court's statutory ground (D) and (E) findings are also probative of best interests. *See C.H.*, 89 S.W.3d at 28. As mentioned in the statutory grounds section above, the trial court heard evidence that Mother's relationship with her paramour exposed the children to domestic violence. The trial court also heard undisputed testimony that E.K.S. suffered a bruise on one entire side of his face while he was in Mother's care. The trial court could also have reasonably concluded that Mother's conduct or relationship with her paramour endangered the children and caused physical harm to E.K.S. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (providing the trial court should consider whether there is a history of abusive or assaultive conduct in the home when making a best-interest determination).

Under her service plan, which was admitted into evidence without objection, Mother was required to participate in a domestic violence program to "obtain the appropriate knowledge and skills to avoid the recurring domestic violence relationship" and "learn how this relationship affects [her] children." Mother participated in domestic violence classes and completed the program in June 2025. Mother stated she learned from the program that violence is not acceptable around children or adults. However, the trial court could have reasonably doubted Mother achieved the goals of the domestic violence program because she declined to leave her abusive paramour until mid-October 2025. And the trial court could have doubted that Mother actually left the relationship because Mother conceded she was residing with the paramour when she was arrested, and she did not allegedly end the relationship until after she was incarcerated. As the sole judge of Mother's credibility, the trial court could have also rejected her self-serving testimony and concluded Mother had no intention of leaving the relationship. Based on the testimony regarding Mother's relationship with the paramour, the trial court could have believed the relationship did not end, or that it ended because Mother was incarcerated or she thought it would help her position at trial and not because Mother chose to protect herself and her children from domestic violence. *See E.D.*, 419 S.W.3d at 620 ("A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest."). The evidence of domestic violence is relevant to the emotional and physical danger to the children now and in the future, Mother's parental abilities, and the stability of the home, and supports the trial court's finding that termination is in the children's best interests. *See In re R.E.C.*, No. 04-24-00478-CV, 2025 WL 325335, at *3 (Tex. App.—San Antonio Jan. 29, 2025, pet. denied).

The trial court heard testimony the children are doing well with their foster family. Wong testified the foster family is meeting the children's physical and emotional needs, taking them to medical and dental appointments, and that the placement is safe and appropriate. P.H.S. is receiving special skills therapy and occupational therapy, and E.K.S. is receiving speech therapy while in the foster family's care. Foster Mother also testified she is taking P.H.S. to play therapy weekly. Foster Mother stated when the children came into her care, they had developmental delays but have "caught up" while in the foster family's care. The trial court heard testimony the children have been with the foster family for nearly a year, and the children have a consistent, daily routine. The children are bonded with their foster family, and refer to Foster Mother as "mom." Wong described the foster family as a loving family who wants to take care of the children. Wong further testified the Department's plan for the children is adoption by the current foster family, and Foster Mother testified they are willing to adopt the children and provide them with the stability they need. This evidence supports a finding that termination is in the children's best interests because it shows that the foster family is able to adequately care for the children's physical and emotional needs now and in the future, and the children are in a stable and safe foster-to-adopt home where they are thriving. *See Holley*, 544 S.W.2d at 372 (providing the emotional and physical needs of the children now and in the future, Department's plan for the children, and the stability of the proposed placement are relevant factors in a best-interest determination).

Although the trial court heard testimony Mother consistently attended visitation with the children, has a bond with the children, and engaged in some services, it could have considered the circumstances around mother's criminal activity leading to incarceration, the missed drug tests, her failure to complete services, and the concerns regarding domestic violence when concluding termination of Mother's parental rights was in the children's best interests.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

Accordingly, Mother's third issue is overruled.

*B. Father*

Here, the trial court heard testimony that Father has not had any contact with the children in over two years. This is significant considering the children were only two and four years old at the time of trial. At the time of trial, Father had served two years and two months of his fifteen-year prison sentence for possession of a controlled substance with the intent to distribute and felon in possession of a firearm. The trial court was entitled to consider the drug-related nature of Father's possession of a controlled substance conviction when considering the children's best interests. *See A.N.*, 2020 WL 354773, at *3.; *A.A.M.*, 464 S.W.3d at 426.

The trial court heard testimony that Father has not provided any support for the children during the pendency of the case. Father testified he is currently enrolled in parenting classes and anger management classes; however, he acknowledged that he had not completed any services at the time of trial, though Father did testify services were unavailable while he was in Bexar County jail. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 735 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (concluding Father's drug-related conviction and lack of engagement with the children

and services while in prison supported finding that termination of his parental rights was in the children's best interests).

Although Father identified paternal grandfather as a potential placement for the children in April 2025, he declined to provide Wong with paternal grandfather's contact information. As of the time of trial, Wong stated he still has not been provided with grandfather's contact information and grandfather has never visited the children during the pendency of the case. Father admitted his current incarceration prevents him from providing a safe and stable home for the children and he is not in a position to be reunified with his children. This evidence supports the trial court's conclusion that Father is unable to provide the children with a safe and stable home. *See id.* at 734–35 (concluding a parent's inability to provide for the children due to imprisonment favors termination under a best-interest analysis when the parent is unable to provide the Department with alternative placements for the children while the parent serves out the remainder of the prison sentence).

The children were two and four years old at the time of trial. Although they are too young to express their desires, the trial court could have considered that the children are bonded and well-cared for by their foster family and have spent minimal time with Father. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) ("When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."). As mentioned above, the children are placed with a loving foster family who want to adopt the children.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights is in the children's best interests. *See* TEX. FAM. CODE

ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

Accordingly, Father's fourth issue is overruled.

### CONSTITUTIONAL AND STATUTORY IMPORTANCE OF A WELL-DEVELOPED RECORD

While we agree the evidence is sufficient to support termination of Mother's parental rights here, we must address the Department's failure to put on its strongest case to show that termination of Mother's rights was in the children's best interests. The law demands that every parental termination must be based on "the rigorous requirements of the clear-and-convincing" evidentiary burden of proof. *In re K.N.*, No. 24-0881, 2026 WL 1614378, at *1, ___ S.W.3d ____ (Tex. June 5, 2026). "Anything less offends not only our Constitution and Family Code, but the innate right and the corresponding responsibility of parents to direct their children's upbringing and to their children's primary source of protection and guidance." *Id.* (internal quotation marks omitted). It is clear from the context of the trial transcript in this case, and upon review of facts in the clerk's record that were not presented as trial evidence, that the Department could have presented more evidence supporting its request for termination than it actually did. The things left unsaid at trial do not become part of the evidence the trial court or this court can consider when rendering judgment. "When the government inadequately shows its work in the trial court, it is difficult for an appellate court to know whether the termination was legally justified." *In re A.C.P.*, No. 25-0688, 2026 WL 1614376, at *2 ___ S.W.3d ___ (Tex. June 5, 2026) (Young, J., statement supporting denial of pet.).

"Whenever the [D]epartment contemplates the death penalty of civil cases, it should proceed only on the basis of a solid record that meticulously documents the grounds for termination, the children's interests, and the [D]epartment's efforts to preserve the family." *Id.* (internal quotation marks and citations omitted). The stakes are high in these parental termination cases. Accordingly, we carefully review these types of appeals and "it is so important for the [D]epartment . . . to build a complete record every time termination is on the table." *Id.* at *3. Because we agree the evidence is sufficient to support the trial court's finding that termination is in the children's best interests, we unanimously affirm the trial court's order terminating Mother's parental rights. However, the Department should not rest on its laurels thinking "good enough" will always be sufficient because the supreme court and this court have made clear that the record must be developed in a manner that is commensurate with the importance of the rights that are at stake. *See id.*; *Z.R.M.*, 665 S.W.3d 825, 829 n.6 (Tex. App.—San Antonio 2023, pet. denied).

Likewise, trial courts should give the Department the necessary time to fully develop its case just like it should give the parents the necessary time to rebut the Department's case. We understand trial courts are overwhelmed, but the adjudication of such important rights should not be expedited to the point that the records are anemic simply for the sake of judicial efficiency.

## CONCLUSION

We reverse the trial court's findings that Father endangered his children under subsection 161.001(b)(1)(D) and (E). In all other respects, we affirm the trial court's order terminating Mother's and Father's parental rights to the children.

Irene Rios, Justice